**Loren L. Lunsford, OSB No. 03229**
ll@usa-eurolaw.com
**MARTENSEN ❖ WRIGHT PC**
One Capital Mall, Suite 670
Sacramento, California 95814
Telephone:  (916) 448-9088
Facsimile:  (916) 448-9084

**Amber Lunsford, Pro Hac Vice** (Application forthcoming)
Amber.lunsford@lunsfordlegal.com
908 Ninth Street, 16th Floor
Sacramento, CA 95814
Telephone:

Attorneys for Plaintiffs
Josi Harrison, Allysun Harkleroad,
And Laura Lefebvre

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT COURT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| JOSI HARRISON, by and through her mother and next friend ANNIE HARRISON, ALLYSUN HARKLEROAD, by and through her mother and next friend SUNDEE MONHING, and LAURA LEFEBVRE, by and through her mother and next friend JENNIFER LEFEBRVE, | Case No. |
| | **COMPLAINT** |
| | (Title IX; Section 1983 Civil Rights; IIED; and Negligence/Negligence Per Se) |
| Plaintiffs, | |
| v. | **DEMAND FOR JURY TRIAL** |
| CLATSKANIE SCHOOL DISTRICT #6J, an Oregon Public School District; JEFF BAUGHMAN, an Individual; | |
| Defendants. | |

1

Plaintiffs Josi Harrison ("**Josi**"), Allysun Harkleroad ("**Allysun**"), and Laura Lefebvre ("**Laura**") (collectively, "**Plaintiffs**") sue Defendants Clatskanie School District # 6J ("**District**") and Jeff Baughman ("**Baughman**"), and allege as follows:

## I.    NATURE OF THIS ACTION

1.    This action is an action for damages, including compensatory damages, punitive damages, and attorney fees and costs, to redress violations of federal statutory rights pursuant to Title IX, 42 U.S.C. Section 1983, and related common law and State of Oregon claims.

## II.    JURISDICTION AND VENUE

2.    Jurisdiction is conferred upon this Court by 28 U.S.C. Sections 1331, 1332, and 1343 civil rights jurisdictions.

3.    Plaintiffs request that this Court invoke supplemental jurisdiction pursuant to 28 U.S.C. Section 1367 with respect to all causes of action based on Oregon statutory provisions or common law as the state claims arise from the same nucleus of operative facts as the federal claims.

4.    Venue is in the District of Oregon pursuant to 28 U.S.C. Section 1391(b) because the claim arose in this Judicial District.

5.    On or about February 25, 2013, Plaintiff Josi Harrison complied with the Oregon Tort Claims Act by sending an ORS 30.275(1) notice of intent to file suit to George Lanning, interim Superintendent of the Defendant District.

## III.    PARTIES

6.    At all material times, Plaintiff Josi Harrison was a resident and domiciliary of Columbia County, State of Oregon and was a student within the Defendant District.

7.    At all material times, Plaintiff Allysun Harkleroad was a resident and domiciliary of Columbia County, State of Oregon and a student within the Defendant District.

8.    At all material times, Plaintiff Laura Lefebvre was a resident and domiciliary of Columbia County, State of Oregon and a student within the Defendant District.

9.    At all material times, Defendant District is and was a school district and corporate public body, organized and engaged in providing educational services in Columbia County, Oregon.

10.    At all material times, Defendant Baughman is and was an individual residing in Columbia County, State of Oregon and was Principal of the Clatskanie Middle/High School ("**CMHS**") within the Defendant District.

## IV.    COMMON STATEMENT OF FACTS

11.    Plaintiffs Josi, Allysun, and Laura mandatorily attended school at CMHS within the District pursuant to Oregon Revised Statutes Sections 339.010 and 339.020.  The CMHS teaches grade levels 7 through 12 at the same facility. The age range of the students at CMHS is roughly ages 12 through 18.

12.    When the District initially combined the middle and high schools onto a single campus, teachers and the administration took great care in minimizing the interaction between middle school age children and high school age children.  Middle school students would assemble in the gym prior to first period, while high school students were in the common area; the middle school classes and high school classes ran on separate bell schedules so the middle school students and high school students were not in the hallways at the same times; and teachers and administrators acted as hallway monitors between classes ensuring that students remained orderly.

13.     After Defendant Baughman was promoted to the position of Dean of Students ("Dean") and subsequently to the position of Principal, the measures put into place to protect the middle school age children quickly eroded.  The procedures put into place to minimize the interaction between middle school age children and high school age children were eliminated.  Middle school and high school students often found themselves in the same classes.

14.     After Defendant Baughman was promoted to the position of Dean and subsequently to the position of Principal, students transferring to CMHS from Clatskanie Elementary School were given an orientation wherein the boys and girls were divided into gender-oriented groups.  The boys were taken on a tour of the girls' locker room and the girls were escorted through the boys' locker room.

15.     The male students at CMHS had frequent and unrestricted access to the girls' locker room.

16.     There was less monitoring of student behavior inside and outside of the classrooms, especially in the hallways.

17.     Plaintiffs are informed and believe, and based thereon allege, that under Defendant Baughman and his administration there was a cavalier attitude towards bullying, especially towards bullying by male students directed at female students.  Plaintiffs are further informed and believe, and based thereon allege, that the District was aware of this cavalier attitude and failed to take any steps to correct it.

18.     Although there had been numerous complaints made by the Plaintiffs and/or the Plaintiffs' parents to teachers, administrators, and directly to Defendant Baughman concerning assaults, batteries, extortion of nude photographs, sexual harassment, and severe and pervasive bullying, the Defendant District's response to each complaint was to (1) do nothing, saying

4

that "*boys will be boys*", or (2) offering to change the girl's, (the reporting victim's), schedule.  Plaintiffs are informed and believe, and based thereon allege, that at no time did the District take any disciplinary action against the bullies.

19.    Under Defendant Baughman a culture developed in the school wherein male athletes ruled the school.  These male athletes could act with impunity and without fear of discipline.  Additionally, a culture of severe peer-on-peer sexual harassment and bullying developed.

20.    Defendant Baughman and the Defendant District had actual knowledge of the culture of severe peer-on-peer sexual harassment and pervasive bullying.

21.    It was foreseeable by the Defendant District that this type of culture would develop after the Defendant District chose to promote Defendant Baughman to the position of CMHS Principal.  During the 2000-2001 school years, Defendant Baughman was the boys' varsity basketball coach.  Throughout that season, several players on the team made allegations against Defendant Baughman.  Specifically, several players alleged that Baughman was verbally abusive and highly intimidating.

22.    Because of Defendant Baughman's verbally abusive and highly intimidating behavior, the boys' varsity basketball team staged a protest and refused to get on a bus for an away game if Defendant Baughman remained the coach.  Instead of protecting the students, the Defendant District sided with Baughman and kicked all of the boys off the team in retaliation for their speaking out and taking a stand against Defendant Baughman.  These actions resulted in a lawsuit being filed against the Defendant District.  *See* Pinard v. Clatskanie School District, 467 F.3d 755 (9th Cir., 2006).

23.    In that case, it was alleged that Defendant Baughman hd told one of the players to hold a basketball "while Baughman 'slapped' and 'beat' at it

5

(also 'hitting [the player's] arms') to make sure he was holding the ball tightly. Although the ball-holding drill might recreate a game situation, what followed was inappropriate.  Baughman made a triangular shape with his fingers and told the player: 'You know what this is? This is what you are. You are a fucking pussy.'"

24.     By promoting an individual like this to the position of Principal of the CMHS, the District demonstrated a deliberate indifference towards bullying and sexual harassment within CMHS.   Additionally, the Defendant District's action in promoting Baughman conveyed a message of tolerance toward bullying and sexual harassment.  With someone like Defendant Baughman at the helm of the CMHS, it is no surprise that a culture of bullying and sexual harassment developed.

25.     Within this culture, older male students at CMHS preyed upon unsuspecting younger females as they entered the CMHS.  They developed a game: the game was the collection and dissemination of nude, semi-nude, and/or sexually explicit images of minor girls.

26.     The boys used every means at their disposal to get these images. They used emotional pleas (*if you really liked me you would send me a photo; if you send me a photo, then I know that you really liked me; if you don't send me a photograph, I will kill myself*); they used threats (they would tell the girls that they already possessed one or more nude photographs of them and that the pictures would be distributed or otherwise published if the girl did not send more photographs); they took photos surreptitiously (in at least one instance, they asked a girl's own brother to take a photograph of her in the shower); or they pretended to be the girl's boyfriend and asked her to send photographs.

27.     Plaintiffs are informed and believe, and based thereon allege that points or other forms of "cred" were given for the boy who could get the most

photographs, get photographs from the most girls, get photographs of girls who were thought to be more difficult, and for the most sexually explicit photographs.

A.     **Facts Pertaining to Plaintiff Allysun Harkleroad**

28.     In September 2009, Allysun moved to the Clatskanie area and enrolled in classes at the CMHS.  At the time, Allysun was 11 years old and younger than most of her classmates.  Allysun was placed in classes with both upperclassman and students in her own grade level.

29.     While attending classes at CMHS, Allysun met J.L., a male CMHS student, a grade ahead of Allysun and two years older.

30.     In or around November 2009, Allysun and J.L. began dating.  After a brief period, however, Allysun found J.L. to be "creepy" and stopped dating him.

31.     In or about December 2009, Allysun began dating another CMHS student, T.J.  J.L. began stalking and harassing Allysun.  He offered to pay Allysun to talk with him, left flowers and gifts for her, appeared at Allysun's home in the middle of the night and knocked on her door, entered her classrooms, told the teacher that another teacher wanted to see Allysun and harassed her in the halls.

32.     Allysun's teachers never once asked for a note or some other evidence that J.L. was acting under another teacher's or administrator's authority when he removed her from their classrooms.  J.L. and other students, were simply allowed to wander the halls during classes without question or reason.

33.     In or about March 2010, Allysun was in a class where the students were to sit in a dark room and play computer games.  J.L. was also in this class. During this time, J.L. repeatedly stuck his hand up Allysun's shirt.

34.    J.L.'s behavior was reported to Defendant Baughman.    Both Defendant Baughman and the Defendant District failed to follow their own policies with regards to sexual harassment, which policies provided in part that:

- Sexual harassment is strictly prohibited and shall not be tolerated;
- All complaints about behavior that may violate the District's policy shall be promptly investigated;
- Students in violation of this policy shall be subject to discipline up to, and including, expulsion and/or counseling or sexual harassment awareness training.

35.    The only action taken by Defendant Baughman and the Defendant District was a directive that J.L. was prohibited from speaking directly to Allysun or T.J.  This direction, by its own terms, was only in effect until May 2010 and was facially inadequate to address the increasing harassment directed towards Allysun by J.L.

36.    In or about June 2010, while school was still in session, J.L. began harassing Allysun for nude pictures.  Allysun, now 12 years old, did not know what to do.  She was afraid of J.L. and reasonably believed that based on the culture at CMHS, and the fact that J.L. was an athlete, she was unprotected. Because of her immaturity, out of fear, and in direct response to J.L.'s constant harassment, Allysun finally capitulated and sent a nude photograph of herself to J.L.

37.    Once J.L. received a nude photograph, he threatened to publish that photograph and/or send it to others if Allysun did not send him more nude photographs.

38.    Allysun complied with J.L.'s demands and ultimately sent approximately 30 photographs within three days, whereupon, J.L. distributed Allysun's nude photographs to numerous other members of the CMHS student

body.  These photographs became widely distributed throughout the CMHS student body and were traded and/or viewed by students using the CMHS computers.

39.     Plaintiffs are informed and believe, and based thereon allege, that Defendant Baughman and the Defendant District knew that nude photographs of other minor female CMHS were being traded by and between CMHS students prior to the nude photographs of Allysun being disseminated.

40.     Defendant Baughman and the Defendant District exhibited a deliberate indifference to CMHS male students' entreaties for female students to send nude, semi-nude, and/or sexual explicit photos of themselves and send them to the male students.  With the knowledge that nude, semi-nude, and/or sexually explicit photographs of minor female students were being requested and disseminated by and among the male students, Defendant Baughman and the Defendant District exhibited a deliberate indifference by failing to follow their own policies on sexual harassment, failing to investigate these severe acts of sexual harassment and by failing to educate the student body about the dangers and perils of such behavior.  Defendant Baughman and the Defendant District simply turned a blind eye to these activities and failed to take any actions whatsoever.

41.     Plaintiffs are informed and believe, and based thereon allege, that J.L. or another member of the CMHS student body caused Allysun's nude photograph to be published on an internet website.

42.     On or about June 17, 2010, Allysun and her mother, Sundee Mohning, went to the Clatskanie Police Department where they spoke with Officer Shaun McQuiddy regarding J.L.'s harassing Allysun for nude pictures. Ms. Mohning offered to provide Officer McQuiddy with phone records that she had ordered from her cellular carrier, texts in question, and the images for his

investigation.  Officer McQuiddy informed her that there was nothing he could do, but would speak with J.L. and tell him to delete the images.

43.     Officer Shaun McQuiddy and the Chief of Police of the Clatskanie Police Department, Marvin Hoover, are both teachers at CMHS.  They teach a class called "Police Science" at CMHS between the hours of 8:30 a.m. and 9:30 a.m. throughout the school year.

44.     Plaintiffs are informed and believe, and based thereon allege, that both Officer McQuiddy and Chief of Police Hoover are employees and agents of the Defendant District and are paid by the Defendant District for teaching the "Police Science" class.

45.     Plaintiffs are informed and believe, and based thereon allege, that there is substantial contact between Officer McQuiddy and Defendant Baughman.  Plaintiffs are further informed and believe, and based thereon allege, that Officer McQuiddy informed Defendant Baughman and the Defendant District about the nude photographs and about J.L.'s involvement.

46.     Defendant Baughman, the Defendant District, and the Clatskanie Police Department failed to take any measurable action to deter J.L.'s actions and protect Allysun, the other Plaintiffs, and the female student body at CMHS.

47.     Allysun's father became aware that Allysun had sent nude photographs to J.L. and despite the fact that she did so under extreme duress, he severely beat her.  Afterwards, Allysun made her first attempt at suicide.

48.     Because of the hostile atmosphere of CMHS and the photographs that resulted therefrom, Allysun's mother transferred her to the Rainier School District the following year.  The Defendant District was informed of Allysun's transfer to the Rainier School District.

49.     In or about October 2011, during the 2011-2012 school year, J.L. was transferred to the Rainier School District in an effort to protect Plaintiff Josi

Harrison, who was sexually assaulted by J.L., as described in greater detail below.

50.    Plaintiffs are informed and believe, and based thereon allege, that the Rainier School District was not informed of J.L.'s history of sexual harassment and the reason for his transfer.

51.    After J.L. was transferred to the Rainier School District, J.L. began harassing Allysun via text message, Facebook, and telephone. J.L. attempted to get Allysun to contact K.W., another minor female, who was present during J.L.'s sexual assault of Josi Harrison. Allysun refused to contact K.W., and alleges that J.L. got hold of her phone and used it to send messages to K.W.

52.    Allysun returned to CMHS for the 2012-2013 school year. J.L. also returned to CMHS. Immediately upon her return, J.L. began harassing her for nude photographs. He sent her photographs of his penis and made inappropriate and lewd comments to her like "*sleep tight, I'll loosen you up in the morning.*"

53.    Due to the pressure of having to encounter J.L. at school, the knowledge that most of the CMHS student body had probably seen her nude photographs, and her feelings of complete and utter helplessness due to Defendant Baughman's and the Defendant Districts' failure to take any action to protect her from a known sexual predator, Allysun made another attempt on her life by cutting her wrists in early October 2012.

54.    Prior to the above-described incidents taking place, Allysun was a stellar student (earning A's and B's) and active in sports. Because of the described incidents and as a proximate result of Defendant Baughman's and the Defendant District's deliberate indifference to known acts of sexual harassment, Allysun has suffered a loss of educational opportunity; her grades have severely deteriorated. She has attempted suicide on multiple occasions, suffers from

post-traumatic stress disorder, depression and bulimia. She demonstrates symptoms of agoraphobia; she attempted to self-medicate and developed a short-lived substance abuse problem. She no longer wants to participate in school and does not like to leave her house unaccompanied.

**B.    Facts Pertaining to Plaintiff Josi Harrison**

55.    Plaintiff Josi Harrison began attending 7th grade classes at the CMHS in 2010 at the age of 12.

56.    During the summer preceding her entry into the 7th grade, Josi started dating C.B., an older male student.

57.    In or around September 2010, Josi was changing her clothes in the girls' locker room when she saw C.B. running out of the girls' locker room.

58.    In or around November 2010, C.B. told Josi that he was in possession of a nude photograph of her. Josi had not sent a nude photograph of herself to C.B., but believed he may have obtained such a photograph surreptitiously, e.g., while in the girls' locker room.

59.    C.B. attempted to secure additional nude photographs of Josi by threatening to distribute the nude photograph he claimed to have of Josi, combined with pleas to her emotions, i.e., telling her that if she did not send him another nude picture of her breasts, she must not really like him and that he would kill himself. C.B. informed Josi that failing to send a new picture would show that she didn't like him and threatened to distribute the nude photograph already in his possession to everyone in the school.

60.    Because she knew nude photographs of other students had just been distributed throughout the school, Josi was fearful that C.B. would do the same thing with the photo he claimed to possess. Due to C.B.'s unrelenting harassment, Josi capitulated and sent a nude photograph to C.B. in November 2010.

61.    The sextortion did not stop.  Following receipt of the first nude picture, C.B. continued to harass and sextort Josi for more nude photographs. Each time he threatened to distribute the nude pictures already in his possession, to the entire school, to publish the nude pictures of Josi on the internet, to inform Josi's parents about the pictures, or to kill himself.

62.    Unable to endure the constant harassment, sextortion, and exploitation, Josi broke up with C.B.

63.    Following Josi's decision to break up with him, C.B. once again began threatening Josi that if she did not resume a romantic relationship with him, he would distribute the nude photographs of Josi to other students at CMHS, publish the nude pictures on the internet, inform Josi's parents of the photographs, or he would kill himself.

64.    Plaintiffs are informed and believe, and based thereon allege, that there were a group of male students at CMHS, including, but not limited to, C.B., T.B., J.L., C.P., T.H., J.D., C.O., T.M., M.K., M.M. and J.W., that prayed on minor female students at CMHS, doing whatever they could to get hold of nude photographs of the girls.  These photographs would be traded amongst these boys like baseball cards.

65.    Following Josi's breakup with C.B., C.B., T.B., and J.L. all began closely following Josi inside the school.  C.B. repeatedly smacked Josi on the backside.  All three of the boys would approach her in groups, threatening to distribute something they claimed to have and that Josi "wouldn't want anyone else to see".  All three boys threatened to distribute nude photos of Josi to other students if she did not provide them with more nude photographs.

66.    In or around February 2011, Josi reported to Defendant Baughman that C.B. was attempting to sextort nude pictures from her, describing the actions

C.B. had taken and continued to take, in an effort to sextort additional pictures from her.  Defendant Baughman informed Josi that he would "look into it".

67.    Following Josi's complaint, Defendant Baughman met with J.L. and another male student, C.O., regarding the trading of nude pictures of minor female CMHS students.  Plaintiffs are informed and believe, and based thereon allege, that Defendant Baughman was informed during these meetings of additional participants in the nude photograph trading scam.   Further, Defendant Baughman was informed that these photographs were being traded via cell phone, email, and Facebook.  Plaintiffs are also informed and believe that these nude photographs were being accessed on CMHS computers in the computer lab.  Plaintiffs are informed and believe, and based thereon allege, that Defendant Baughman was aware that CMHS computers were being utilized to access nude photographs of minor female CMHS students.

68.    J.L. provided Defendant Baughman a list of names of people who possessed the nude photographs.  That list included, but is not limited to: C.B., T.H., C.P., H.S., T.M., C.O., and J.D.

69.    Plaintiffs are informed and believe, and based thereon allege, that Defendant Baughman failed to take further remedial action against J.L., or any of the other participants in the collection, dissemination of nude, semi-nude, and/or sexually explicit images of minor female students or the participants in the use of those images for the purposes of sextortion.

70.    Plaintiffs did not discover the facts regarding Defendant Baughman's meeting with J.L. and C.O., and his subsequent failure to take any remedial actions, until April 2013.

71.    Plaintiffs are informed and believe and based thereon allege, that neither Defendant Baughman nor the Defendant District, reported the circulation of nude and/or sexually explicit photos of minor female students to the Oregon

Department of Human Services, nor to any law enforcement agency, in direct violation of Oregon law.  O.R.S. 419B.010, O.R.S. 419.015, respectively.

72.    Plaintiffs are informed and believe and based thereon allege, that in February 2011, Defendant Baughman met with C.B. on another occasion regarding the possession and extortion of nude photographs of minor female students at CMHS including, but not limited to, Josi.

73.    At the conclusion of Defendant Baughman's meeting with C.B., no report was provided to the Oregon Department of Human Services, nor law enforcement, regarding the sexual exploitation or the extortion, collection, possession, or trading, of nude photographs depicting minor female students at CMHS.

74.    In or about the second half of the 2010-2011 school year, S.H., a minor, female student at CMHS, witnessed C.O. opening an email from J.L. depicting a nude minor female student at CMHS on a computer in the CMHS computer lab.

75.    In or about the second half of the 2010-2011 school year, C.O. requested a meeting with Defendant Baughman to report receiving roughly 20 photographs from J.L.'s email, of nude, female students, D.H. and K.K. from J.L.'s email account.

76.    Plaintiffs are informed and believe, and based thereon allege, that C.O. also received nude images of minor, female students on the CMHS computers.

77.    In or about the second half of the 2010-2011 school year, C.O. met with Defendant Baughman and reported that while at school, he had received unsolicited nude photographs of female CMHS students from J.L.

78.    Plaintiffs are informed and believe, and based thereon allege, that during this meeting, C.O. furnished Defendant Baughman with names of

additional victims of sextortion including, but not limited to, D.H., K.K., K.S., K.T., and L.B..  At the time, all the girls were under the age of eighteen.  C.O. also informed Defendant Baughman that he believed H.S. and T.M. also were in possession of nude photographs of minor female students.

79.    At the conclusion of his meeting with C.O., Defendant Baughman directed C.O. to delete these images from his cell phone and witnessed C.O. deleting those images.

80.    Neither Defendant Baughman nor the Defendant District reported the sexual exploitation, sextortion, collection, possession, or trading of nude and/or sexually explicit photographs of minor, female students at CMHS to the Oregon Department of Human Services or to law enforcement agencies.

81.     Neither Defendant Baughman nor the Defendant District informed the parents of the minor, female students that they were victims of sextortion or sexual harassment.

82.    Neither Defendant Baughman nor the Defendant District conducted educational seminars for the CMHS student body, staff, faculty, or administration, nor warned students against the dangers of sending nude digital images.

83.    Plaintiffs are informed and believe, and based thereon allege, that Defendant Baughman had personal knowledge of a competition or "game" among certain male CMHS students to collect nude photographs of minor, female students at CMHS.

84.    Despite their knowledge of the alleged game or competition to collect the most nude photographs of female students, Defendant Baughman and the Defendant District failed to take any action to punish or otherwise deter the minor boys involved, nor did they take any action to warn the female student body not to send nude photographs to male students, or take any actions to

inform the parents of the minor female students about the nude photographs or the prevalent sextortion.

85.    Following Josi's report to Defendant Baughman, C.B. and J.L. increased their harassment of her.

86.    In or about March 2011, Josi met with Defendant Baughman to follow-up on her report of the sextortion.  Defendant Baughman did not discuss whether any investigation had been done nor whether any remedial measures had been taken in relation to the sextortion by C.B. or the other boys.

87.    In or about May 2011, Josi reported to her physical education teacher, Mr. Van Voorst, that she was being harassed by several boys in her physical education class, including, but not limited to, C.B. and L.B.   Mr. VanVoorst's response was that he would "keep an eye on things."   The harassment continued.

88.    In or about May 2011, Josi reported the continuing harassment by C.B. and L.B. during her physical education class to Defendant Baughman and the Athletic Director, Annique Olsen.  At this time, she expressed her belief that nothing had been done by Mr. Van Voorst to address the harassment.  Josi was instructed to leave her physical education class and go to the office, or go to another classroom if she felt uncomfortable during physical education.

89.    This was the Defendant District's common reaction in response to complaints of peer-on-peer sexual harassment made by female students at CMHS.  In theory, the victims of the harassment would be separated from their classes or their schedules changed.   No actions were taken against the boys initiating the harassment.

90.    In or about May 2011, Josi again reported the harassment by C.B. and L.B. during physical education class to Defendant Baughman.  Defendant

Baughman promised that remedial action would be taken: namely, that C.B. and L.B. would be suspended.  No such remedial action was taken.

91.     In or about May 2011, C.P. informed Josi that he had nude photographs of her and that he would distribute these photographs to other students at CMHS if she did not send more nude pictures to him.

92.     On or about May 6, 2011, Josi was sexually assaulted by J.L. at the Clatskanie City Park.

93.     On or about May 13, 2011, CMHS guidance counselor Tammi Tack contacted Josi's mother, Annie Harrison, to report that Josi was displaying symptomology indicative of Post-Traumatic Stress Disorder.

94.     On or about May 19, 2011, Josi reported to Tammi Tack, CMHS counselor, that on May 6, 2011, J.L. had sexually attacked her and another female CMHS student.

95.     On or about May 19, 2011, CMHS counselor, Tammi Tack, reported the sexual assault of Josi and the other CMHS student, to the Clatskanie Police Department.

96.     On or about May 20, 2011, Josi and her mother met with Defendant Baughman and informed him of the May 6, 2011 sexual assault.  Defendant Baughman asked if J.L. had been following or otherwise harassing her.  Josi reported to Defendant Baughman that prior to the sexual assault, J.L. had been following her on CMHS grounds.  Defendant Baughman asked Josi to report if J.L. was following or otherwise harassing her, and promised to address any such behavior.

97.     Despite the fact that J.L. had sexually assaulted Josi, and that Defendant Baughman had prior notice that J.L. harassed Allysun, Defendant Baughman did not remove J.L. from any shared classes, assemblies, or school functions attended by Josi during the entire remainder of the 2011 school year.

98.    In September 2011, Defendant Baughman was shown a copy of a no-contact order issued against J.L. as a result of the May 6th sexual assault. The no-contact order was also shown to CMHS secretaries Beth McDonald and Sharon Hicks, and CMHS counselor Tammi Tack. Ms. Tack made a photocopy of this order.

99.    At this time, Defendant Baughman informed Annie Harrison, Josi Harrison's mother, that out of concern for J.L.'s privacy, he would not notify all teachers at CMHS of the stay-away order imposed upon J.L. Once again, Defendant Baughman failed to protect Josi and the other female students at CMHS.

100.    On or about October 2011, Josi attended a home football game held at CMHS. Several witnesses saw two CMHS students throw popcorn and other objects at Josi and verbally assault her. No remedial action was taken.

101.    On or about October 14, 2011, Defendant Baughman permitted J.L. to don the full CMHS Tiger mascot uniform, including full head cover for the CMHS homecoming game. J.L. used this opportunity to stalk Josi at the game. Upon discovering his identity, Josi reported the matter to a Police officer. After the Police officer informed J.L. that Josi had reported his violation of the court's no-contact order, J.L. returned the uniform to CMHS Activities Director, Mary Schulte. Defendant Baughman then transported J.L. to his home. No disciplinary actions were taken against J.L. by Defendant Baughman or any teachers or administrators at CMHS.

102.    On or about October 17, 2011, Defendant Baughman met with Annie Harrison. Defendant Baughman admitted to Mrs. Harrison that he personally allowed J.L. to dress in the CMHS Tiger mascot costume, with full covered head, despite the fact that he knew J.L. was subject to a stay-away order,

that J.L. was under investigation for the attempted rape of Josi and another minor, female student, and that J.L. was currently on house arrest.

103.    During that same meeting, Defendant Baughman and Annie Harrison discussed the lack of protection in place for Josi at CMHS.  Annie informed Defendant Baughman that she intended to remove Josi from CMHS. Mrs. Harrison discussed her intention to move Josi to the Rainier or Knappa School District.  Defendant Baughman stated that although he would not stop her from transferring Josi to either of these districts, Josi would not be able to participate in sports if she were to transfer out of the Clatskanie School District. Defendant Baughman advised Mrs. Harrison of an internet based class, which would still require Josi to take her tests at CMHS and attend CMHS on a daily basis, but only in one classroom.  Mrs. Harrison informed Defendant Baughman that this was unacceptable and she did not want Josi at CMHS at all.  Mrs. Harrison discussed a program in a private institution which would not have the same school system, that permitted Josi to submit written, rather than computer-based tests (the "**Insight Program**").  Mrs. Harrison was also informed that Josi would not be able to participate in sports if she attended the Insight Program. Josi has always been actively involved in school sponsored organized sports and relied on these as extracurricular activities in anticipation of college applications. Defendant Baughman further informed Mrs. Harrison that the Clatskanie School District would not pay the expenses incurred by or for Josi in that program. After further discussion, Defendant Baughman informed Mrs. Harrison that Josi could use the EdOptions Educational Program and still play sports, and Josi would still be required to take her examinations at CMHS.  Josi transferred to the EdOptions Program shortly thereafter and remained in that program for the remainder of the school year.

104.    In or about October 17, 2011, J.L. was transferred to Rainier High School.  Defendant Baughman failed to notify the principal of Rainier High School the reason for the transfer of J.L., i.e., that he was suspected of committing a sexual offense, or that he had admitted to the solicitation, possession, and distribution of nude photographs of fellow middle and high school students ranging in age between 12 years and majority.

105.    In or about September 2012, Josi re-enrolled in CMHS.  Annie Harrison informed Defendant Baughman that Josi had a stress-induced heart condition.

106.    In or About September 2012, Josi was enrolled in a class called "Lifetime Fitness."  The instructor of this class repeatedly required the students to walk to "Flowers N Fluff," a business owned by Sherri Lumijarvi, J.L.'s mother.

107.    On or about October 2012, CMHS organized its annual "Powder Puff Football" Game.  The school assigned CMHS football team players to "coach" the powder puff teams organized by class year.  Josi was on the Freshman Powder Puff Team coached by C.W.  He informed Josi that S.A., a cousin of J.L.'s and member of the Junior Powder Puff team, specifically asked C.W. to place Josi in her path so she could inflict physical injury.  Josi withdrew from the Powder Puff Football team.  No remedial action was taken by school administration.

C.    **Facts Pertaining to Plaintiff Laura Lefebvre**

108.    On or about July 4, 2010, Plaintiff Laura Lefebvre attended the annual Fourth of July celebration at the Clatskanie City Park with her parents. At that celebration, J.L. grabbed Laura's breast.

21

109.    Laura's parents reported the unwanted touching to Officers Shaun McQuiddy and Josh Lineberry of the Clatskanie Police Department immediately. A third party bystander also reported the assault to Officer McQuiddy.

110.    Officer McQuiddy escorted J.L. to his mother's place of business, informed him that he was not to return to the park, and informed him that he was not to have any further contact with Laura as a result of the inappropriate touching.  Nevertheless, J.L. returned to the park an hour later, where he paced back and forth about 20 yards from Laura in an obvious attempt to menace her.

111.    During the weeks following July 4, 2010, Laura continued to receive messages from what appeared to be J.L., using a "Text Free" Application.

112.    Laura's parents reported the continuing contact to Officer McQuiddy and attempted to provide Officer McQuiddy with copies of Laura's phone records.  When Officer McQuiddy refused to accept those records, Laura's mother read details of those records to him in an effort to get protection for Laura.

113.    Plaintiffs are informed and believe, and based thereon allege, that the Clatskanie Police Department is in frequent and continuous contact with the CMHS administration, and specifically Defendant Baughman.  Plaintiffs are further informed and believe, and based thereon, allege that CMHS administration was notified that J.L. presented a danger to minor girls.

114.    Laura began attending 7th grade classes at the CMHS in 2010 at the age of 12.

115.    During the Fall 2010 and early Spring 2011 semesters, Laura's mother repeatedly expressed concerns to Defendant Baughman regarding the prevalence of peer-on-peer sexual harassment and the culture of bullying present at the CMHS.

116.    During this time period, Laura's mother also met with Defendant Baughman to discuss the disparate treatment of female students by the CMHS gym teacher, Tim Van Voorst.  Specifically, Laura's mother complained that while male CMHS students were expected to participate in and excel at physical education activities, female students were not required to participate in physical activities.

117.    In or about the Spring 2011 semester, Laura's parents determined that the culture of bullying and sexual harassment at CMHS was harming Laura's educational environment and transferred her to the Camas School District.  After one trimester, they found the commute to be unworkable.

118.    During the early summer of 2011, Laura briefly entered into a dating relationship with T.B.  After T.B. ended the relationship in the first part of July 2011, T.B. began harassing her for a nude photograph.  This harassment was constant and lasted for weeks.  At this same time, C.B. also began harassing Laura for a nude photograph.

119.    Laura eventually succumbed to T.B.'s demands and sent him a nude photograph.  Once Laura capitulated and sent a nude photograph to T.B., C.B., immediately responded from his cellular phone with a text that read "I have it."

120.    The sextortion did not stop.  Following receipt of the first nude picture, T.B. and C.B. continued to harass and sextort Laura for more nude photographs.

121.    In or about August 2011, C.B. and/or T.B. distributed Laura's nude image to numerous classmates at CMHS, including members of the athletics team.  The images were distributed during school hours and at school sponsored activities, as well as times outside school hours.

122.    In or about September 2011 and at times thereafter, C.B. distributed the nude photograph of Laura to numerous students at CMHS.

123.    Unable to endure the constant harassment, sextortion, and exploitation, Laura reported what had happened to her parents within a matter of days after the distribution of the photographs to other CMHS students.

124.    Laura's parents became aware of texts from M.K., J.W., C.B. and T.B. to Laura Lefebvre, demanding nude photographs of Laura.  Laura's parents responded to the continuing texts with a directive to delete the photographs or they would prosecute.

125.    Laura was distressed about the constant harassment and informed her parents of her desire not to return to CMHS for the upcoming fall semester.

126.    Laura's parents became aware of a group of CMHS students who were joining together in a small program using Insight School of Oregon as a curriculum.  The Clatskanie School District funded the program using the allotted per student funding provided by the State of Oregon.  For each student, the Clatskanie School District kept 10% of the funding, while the other 90% of the funding was applied to the cost of the program.

127.    Laura's parents contacted Defendant Baughman and Rhonda Stecker to notify them of their desire to have Laura take part in this opportunity. Laura's parents specifically informed Defendant Baughman and the Defendant District that Laura was being harassed by T.B. and C.B. and they desired to have her removed from the oppressive CMHS environment.  Laura's parents were led to believe that Laura would be allowed to enroll in this program and that the Defendant District were making the necessary arrangements to make this happen.

128.    In late August 2011, a week before the school year was to begin, Defendant Baughman informed Laura's parents that the Clatskanie School

24

District had decided not to allow any more students to participate in the Insight Program because it came at too big a financial loss to the District.  Defendant Baughman informed Laura's parents that Laura could participate in a different online program that CMHS was using called "ED Options."

129.    The Insight Program was a very demanding and multidimensional course that offered live sessions with teachers and advanced course offerings, which would meet the objectives of Laura's "Talented and Gifted Educational Plan."  The ED Options program was a less demanding program directed towards remedial instruction.

130.    Defendant Baughman informed Laura's parents that the decision was made because "ED Options" would only cost 20% of the per student funding allotment, allowing CMHS to keep 80% of the school funding in contrast to the 10% that CMHS would keep if Laura were enrolled in the Insight Program.

131.    Laura's parents expressed their objections to Defendant Baughman and informed him that they believed Laura Lefebvre was being placed at a disadvantage because she was being excluded from the program that would meet her Talented and Gifted Educational Plan and placed, instead, in a program that was a remedial credit recovery program.

132.    The Defendant District and Defendant Baughman assured Laura's parents that Laura would be provided with enrichment opportunities and be permitted to participate in science labs and educational opportunities at the CMHS.

133.    Laura's parents appealed to the Defendant District School Board the decision by the District to place Laura in the "Ed Options" rather than the "Insight" Program.  The appeal was denied.

134.    Faced with the decision to have their daughter return to the culture of harassment and bullying that permeated the CMHS or to have her enrolled in

the remedial program, Laura's parents opted for the online program believing that it was the better option for her safety and wellbeing. They were buoyed by the promise of enrichment opportunities. Despite Defendant Baughman's assurances, the promised enrichment opportunities were never provided.

135.    The "ED Options" classes consisted of readings followed by multiple choice testing. The ED Options program was so lax that Laura Lefebvre, a straight "A" student, was able to complete a quarter of the 8th grade curriculum over the course of a single weekend.

136.    Laura is informed and believes, and based thereon, alleges that the Insight Program had 11 male students and two female students enrolled at that time.

137.    Laura is informed and believes, and based thereon alleges, that she was denied the same educational opportunities as male students because she was female. The only reason the two female students were allowed to enroll in the Insight Program is because of personal connections to the Defendant District.

138.    During the Fall 2011 school semester, the Defendant District developed a small work group to address the continuing concerns with bullying, harassment, and gender disparity being raised towards CMHS. Teachers, administrators, and school board members attended along with at least 20 parents. Laura's mother spoke openly to share her concern about safety and supervision of students at CMHS, as did other parents who were present.

139.    Parents attending the work group were asked to note their interest in continuing participation by providing their names and contact information on a sheet of paper. Laura's mother did so. Laura's mother was never contacted again by CMHS regarding her concerns for the safety and supervision of students at CMHS.

140.    Plaintiffs are informed and believe, and based thereon allege, that no other public meetings were conducted to address the bullying, harassment, or gender disparity occurring at CMHS and no actions were ever taken in response to the parents' concerns for the safety and supervision of CMHS students.

141.    The "Ed Options" program continued to prove insufficient for Laura's educational needs.  Laura's parents were left with no other options than to re-enroll Laura at CMHS in February 2012.

142.    In or about February 2012, Laura's mother talked to C.B.'s mother regarding the continuing harassment of Laura, and C.B.'s claim that he possessed a nude image of Laura's mother.  C.B.'s mother took no remedial action.

143.    In or about the winter of 2012, C.B. boasted while at CMHS that he had nude pictures of Laura's mother.

144.    In or about March 2012, older male CMHS students subjected Laura to repeated bullying, harassment, and physical assault during English class.  Male students were taking pencils from her hand and throwing it across the room.  Male CMHS students pushed her schoolbooks off her desk.

145.    In or about March 2012, C.P., a male student at CMHS, threw a book at Laura during Laura's honors English class.  The book struck Laura's face and cut her lip.  Laura was a victim of persistent and continuous harassment at the hands of C.P.

146.    In or about March 2012, Laura's mother had a phone meeting with Defendant Baughman and CMHS Vice Principal Annike Olsen to communicate her concerns about the bullying, harassment, and assaults that were occurring during Laura's English class at CMHS.

147.    Defendant Baughman informed Laura's mother that he was not concerned about the level of harassment being suffered by Laura.  During this meeting Defendant Baughman told Laura's mother: "These things have to be

handled very carefully.  We don't want her to get it any more than she deserves." Defendant Baughman informed Laura's mother that she would not be made aware of any actions taken because disciplinary actions are confidential.

148.    Plaintiffs are informed and believe, and based thereon, allege that the Defendant District and Defendant Baughman covered up the fact that no disciplinary actions followed complaints of peer-on-peer sexual harassment and bullying by stating that disciplinary actions are confidential.

149.    The bullying, harassment and assaults directed toward Laura during Honors English continued.  The English teacher moved Laura's desk to an area that was isolated and close to the teacher's desk in order to protect her.

150.    In or about March 2012, C.P. pushed Laura into the lockers at CMHS hard enough to draw blood and leave a bruise on Laura's back where the locker handle is positioned.

151.    In or about March 2012, Laura had her wisdom teeth extracted.  She returned to classes at CMHS while stitches were still present in her mouth.  C.P. smacked Laura in the face with enough force to break the stitches in her mouth and draw a significant amount of blood.

152.    Laura reported the battery to Tim Van Voorst, as soon as the battery occurred.  Mr. Van Voorst, who was present at the time of the battery, did not address the battery, did not take any action to send Laura to the school nurse, did not send C.P. to the Principal's office, and did not take any disciplinary action against C.P.

153.    On or about March 15, 2012, Laura delivered a silent presentation in leadership class addressing the statistics of cyber-bullying and bullying victims across the nation who had taken their own lives.  The presentation was a clear call for help.  The teacher present during the class, however, was not properly trained to identify the signs of a suicidal student and therefore failed to

take any action and failed to notify Laura's parents.    The instructor of the leadership class was the same instructor as the Honors English Class where Laura suffered repeated harassment and abuse.

154.    On or about April 10, 2012, Laura attempted to commit suicide as a result of the emotional distress stemming from the harassment, sextortion, and bullying that was permitted to continue at CMHS.

155.    On or about April 20, 2012, Laura's mother informed the CMHS' administration of Laura's suicide attempt and requested that a plan be put in place for her daughter's safety when she returned to classes at CMHS.    Laura's mother was surprised to learn that none of CMHS' administrators or faculty knew that Laura had been absent.

156.    Laura's mother insisted that a very specific plan be put into place for Laura's return.    The plan required Laura's mother to drop her off at a specific door located near her classroom in the morning.    A CMHS staff member was to have "eyes on her" upon Laura's entry into the school and Laura's mother was to be contacted by CMHS administration or staff at any time Laura Lefebvre was not visible to CMHS staff or faculty member.

157.    Laura and her mother complied with the safety plan put in place on the first day of Laura's return to CMHS.

158.    On the second day, Laura's mother kept Laura home to test the enforcement and effectiveness of the plan.    At no time during the day did any member of the CMHS administration, faculty, or staff contact Laura's mother to inform her that Laura was not present at the school.    Laura's mother contacted the CMHS administration at approximately 1:30 p.m. to check on Laura and was informed by CMHS school secretary Beth McDonald that no one in the CMHS administration, faculty, or staff knew that Laura was not present in class. Laura's mother expressed her concern that the school could not keep Laura safe and

informed Beth McDonald about everything that had occurred. Beth McDonald responded that Defendant Baughman had intentionally kept the CMHS administration and staff from information regarding the safety plan citing that there was "no need to know."

159.    Following these events, Laura's psychiatrist certified that her condition was far too fragile for her to return to CMHS and that the Defendant District had demonstrated its inability to provide a safe and adequate educational environment for Laura.

160.    Laura's parents sought an educational plan for Laura under Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("**Section 504**") due to medical disability resulting from the physical and psychological trauma stemming from the sextortion, bullying, harassment and assault that Laura suffered while a student at CMHS.

161.    Laura's parents requested that Laura be privately tutored for the remainder of the school year.

162.    Defendant Baughman informed Laura's parents that tutoring was not possible because it would be too great an expense for the Defendant District.

163.    After the Defendant District was advised that it was required to provide suitable educational accommodations for Laura, Defendant Baughman submitted two names as possible tutors to Laura's parents.  One option was a long-retired biology teacher known to be unstable while employed within the Defendant District.  The second option offered was a teacher who had been fired from the Defendant District for failing to meet expectations during her probationary period.

164.    Laura's parents insisted that the options for tutors were not acceptable.  Laura's parents requested Mr. Brad Thorud be assigned to tutor

Laura.  Defendant Baughman eventually capitulated and allowed Mr. Thorud to tutor Laura for the remainder of the spring 2012 semester.

165.    Laura's parents removed Laura from CMHS and transferred her to the Rainier School District for the fall 2012 semester.

166.    The Defendant District reported Laura's parents for enrolling their children in a school outside of the Clatskanie School District.

167.    Plaintiffs did not discover the facts regarding Defendant Baughman's meetings with Josi Harrison and his subsequent failures to take any remedial actions or make any reports to either law enforcement or the Department of Human Services until August 2013.

168.    Plaintiffs did not discover the facts regarding Defendant Baughman's meeting with J.L. and C.O., and his subsequent failures to take any remedial actions or make any reports to either law enforcement or the Department of Human Services until August 2013.

169.    Plaintiffs are informed and believe, and based thereon allege, that the Defendant District and Defendant Baughman knew of the extortion, collection, and dissemination of nude pictures occurring amongst the student body of CMHS for at least one year prior to the nude picture of Laura Lefebrve being collected and disseminated and had neither taken any disciplinary actions to curb the behavior nor reported the behavior to the proper authorities as mandated by O.R.S. 419B.010 and 419B.015, respectively.

170.    Plaintiffs are informed and believe, and based thereon, allege that upon receipt of a notice of intent to sue letter sent by Plaintiff Josi Harrison's lawyer in February 2013, Defendant Baughman and members of the CMHS administration and staff had meetings with J.L., C.B., C.O., T.B. and members of the athletics teams to discuss the impending lawsuit against CMHS and the individual CMHS students.

171.    On or about February 28, 2013, John Doe, Laura's brother, received phone calls from J.L., C.B., and C.P. threatening to report him to the OSAA for violating policy by participating in athletics outside of Clatskanie.

172.    On or about February 28, 2013, Laura received a phone call from C.P.  C.P. informed her that he had been notified in a team meeting with basketball coaches about allegations against him and others related to bullying. C.P. questioned Laura about her involvement in the impending case and questioned her about Josi Harrison.

173.    Following the February 2013 meeting, C.P., J.L. and other minor students present at that meeting attempted to contact Laura and other minor female students they knew to be former victims in an effort to keep them from coming forward.

## FIRST CAUSE OF ACTION

(Title IX – Peer-on-Peer Sexual Harassment)

174.    Plaintiffs reallege and incorporate by this reference the allegations in paragraphs 1 through 173 as though fully set forth herein.

175.    The Defendant District is a recipient of federal funding.

176.    The Defendant District was well aware of the adverse treatment directed toward the Plaintiffs on more than one occasion and yet they failed to take sufficient action to remedy the sextortion, bullying and sexual discrimination.  Defendant District chose indifference to the severe, pervasive, and objectively offensive conduct of a large number of male students directed at the minor, female students within the District.

177.    As a result of the District's deliberate indifference to the sextortion, bullying, and sexual discrimination based on Plaintiffs' gender, Plaintiffs were deprived of access to educational opportunities and benefits provided by the District to other students.

178.    Plaintiffs have suffered and continue to suffer from the above described sextortion, bullying, and sexual discrimination and have been damaged in an amount to be proven at trial, but in no event less than Five Million Dollars.

179.    Pursuant to 42 USC Section 1988, Plaintiffs are entitled to an award of their attorneys' fees and costs incurred in this action.

## SECOND CAUSE OF ACTION

(Fourth and Fourteenth Amendment Violation: Equal Protection
Clause; 42 USC Section 1983)

180.    Plaintiffs hereby reallege and incorporate by this reference the allegations in paragraphs 1 through 179 as though fully set forth herein.

181.    At all material times, Defendant District and Defendant Baughman had an unofficial policy, custom or practice of intentionally tolerating student-on-student gender discrimination.

182.    As a result of the Defendant District's and Defendant Baughman's unofficial policies, customs or practices, Plaintiffs continued to be sextorted, harassed, bullied, disciplined, and punished by their fellow students.   Said behavior was condoned and tolerated by Defendant District and Defendant Baughman.

183.    Both the Defendant District's and Defendant Baughman's unofficial policies, customs or practices are unconstitutional because the Defendant District and Defendant Baughman failed to act and were deliberately indifferent toward Plaintiffs based on their gender.

184.    The Defendant District and Defendant Baughman's unofficial policies, customs or practices are unconstitutional in that they deprived the Plaintiffs of their right to an education equal to their peers, and violate the Fourteenth Amendment of the Constitution.

185.    As a result of the Defendant District's and Defendant Baughman's unofficial policies, customs or practices, Plaintiffs were sextorted, bullied, harassed, assaulted and denied educational opportunities in violation of the Fourth Amendment of the Constitution.

186.    As a direct result of the Defendant District's and Defendant Baughman's unofficial policies, customs or practices, Plaintiffs suffered bodily injury, embarrassment, humiliation, anxiety, stress, fear and severe emotional trauma, all to their economic and noneconomic damage in an amount to be proven at trial, but in no event less than Five Million Dollars.

187.    Pursuant to 42 USC Section 1988, Plaintiffs are entitled to an award of their attorneys' fees and costs incurred in this action.

## THIRD CAUSE OF ACTION

(Intentional Infliction of Emotional Distress)

188.    Plaintiffs hereby reallege and incorporate by this reference the allegations in paragraphs 1 through 187 as though fully set forth herein.

189.    Plaintiffs and the Defendant District are in a special relationship (in locos parentis).

190.    Defendant District's conduct in regard to the Plaintiffs was extreme and outrageous and constitutes an extraordinary transgression of the bounds of socially tolerable conduct.

191.    Defendant District acted intentionally and knowingly to cause, or in reckless disregard of whether their acts would cause, Plaintiffs to suffer emotional distress.

192.    As a direct and proximate result of the Defendant District's unlawful conduct, Plaintiffs suffered damages in an amount to be proven at trial, but in no event less than Five Million Dollars.

193.    Plaintiffs further seek punitive damages for the Defendant District's unlawful conduct.

### FOURTH CAUSE OF ACTION

(Negligence/Negligence Per Se – Breach of Duty in *Loco Parentis*)

194.    Plaintiffs hereby reallege and incorporate by this reference the allegations in paragraphs 1 through 193 as though fully set forth herein.

195.    Defendant District has a duty of *in loco parentis* when students are within the school boundaries and within school hours.  Defendant District breached its duty to the Plaintiffs by, *inter alia*, failing to follow Clatskanie School District 6J Policies JB, JBA, JFC, JFCFA/GBNAA, and JFCM prohibiting discrimination, harassment, extortion, intimidation, bullying, cyber-bullying, and threats of violence.  Defendant District further breached its duty to the Plaintiffs by failing to adequately investigate and deter the discrimination, harassment, extortion, intimidation, bullying, cyber-bullying and threats of violence.

196.    Defendant District breached its special duties to Plaintiffs by failing to adhere to the law and its own policies in the performance of its official duties, and by so doing, proximately and foreseeably caused Plaintiffs' injuries, damages and losses.

197.    As a result of Defendant District's failures to adhere to the law and its own policies, Plaintiffs suffered bodily injury, embarrassment, humiliation, anxiety, stress, fear, and severe emotional trauma, all to their economic and noneconomic damage in an amount to be proven at trial, but in no event less than Five Million Dollars.

### FIFTH CAUSE OF ACTION

(Negligence/Negligence Per Se – Breach of Duty of Supervision)

198.    Plaintiffs hereby reallege and incorporate by this reference the allegations in paragraphs 1 through 197 as though fully set forth herein.

199.    Defendant District warrants and accepts the burden and responsibility of keeping students safe by and through its adopted school board policies.

200.    Defendant District owes Plaintiffs a duty to supervise all students when they are in school.  District personnel are expected to act as reasonable adults in providing for the safety of students in their charges, and supervise all students at all times.

201.    Defendant District breached its duty of supervision, which allowed other students to sextort, harass, intimidate, bully, and discriminate Plaintiffs without deterrence by District personnel.  By failing to supervise its students, Defendant District created, allowed, and condoned a hostile education environment which proximately and foreseeably caused Plaintiffs' injuries, damages, and losses.

202.    As a result of Defendant District's failures, Plaintiffs suffered bodily injury, embarrassment, humiliation, anxiety, stress, fear, depression, and severe emotional trauma, all to their economic and non-economic damage in an amount to be proven at trial, but in no event less than Five Million Dollars.

**WHEREFORE**, Plaintiffs pray for the following relief:

A.    On the First Cause of Action, for a finding that the Defendant District violated Title IX, and for damages in an amount to be proven at trial, but in no event less than Five Million Dollars;

B.    On the Second Cause of Action, for a finding that the Defendant District and Defendant Baughman violated Plaintiffs' constitutional rights through a denial of rights under the Fourteenth Amendment to the Constitution, and for damages in an amount to be proven at trial, but in no event less than Five Million Dollars;

C.      On the Third, Fourth, and Fifth Causes of Action, for a finding that Defendant District is liable to Plaintiffs for Intentional Infliction of Emotional Distress, Negligence, and Negligence *Per Se*;

D.      For economic damages in an amount to be proven at trial;

E.      For non-economic damages in an amount to be proven at trial;

F.      For attorneys' fees and costs pursuant to 42 USC Section 1988 and 29 USC Section 794a.

G.      For any other just and equitable relief.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby request a trial by jury of the issues so triable herein.


DATED:  October 15, 2013

                                MARTENSEN ❖ WRIGHT PC


                                By:   /s/ Loren L. Lunsford
                                        LOREN L. LUNSFORD
                                Attorneys for Plaintiffs Josi Harrison,
                                Allysun Harkleroad, and Laura
                                Lefebvre